CLARENCE LEONARD PIERCE, JR. *v.*
STATE OF ARKANSAS

5460                                    451 S. W. 2d 219

Opinion delivered March 9, 1970

*David C. Shelton,* for appellant.

*Joe Purcell,* Attorney General; *Don Langston* and *Mike Wilson,* Asst. Attys. Gen., for appellee.

Lyle Brown, Justice. Clarence Leonard Pierce, Jr. was convicted of grand larceny, the separate charges involving the theft of seven blank money orders which he was accused of completing by filling in names and various amounts, and cashing. Pierce here challenges three instructions, the court's refusal to instruct on petit larceny, the admissibility of in-custody statements, and the sufficiency of the evidence.

Railroad Salvage Company is a partnership conducting a substantial retail business in West Memphis, Arkansas. It operates in two buildings which are connected by an archway. Appellant was hired to work in the building from which furniture was sold. The other building was a grocery store. On the grocery side of the business, Railroad Salvage engaged in the sale of Travelers Express Checks. These were kept in a separate cash register which was devoted exclusively to the sale of checks. Each check had a separate serial number and they were to be sold in numerical order. In December 1968 Travelers discovered that checks from Railroad Salvage were being cashed out of order. Subsequent investigation revealed that those checks came from the bottom of the stack, that they were filled in for sums ranging from $100 to $120, and on the line for the purchaser's name to be affixed was the purported signature of Clarence L. Pierce, appellant. The State offered expert testimony that the handwriting was that of Pierce. Three persons testified that only they were authorized to sell checks and that they had sold none to appellant. An employee of Red Barn Auction testified that she cashed one of the checks for appellant. Elmer Dye, one of the partners in Railroad Salvage, stated that he received no money for the seven checks, and that

Railroad Salvage was compelled by contract to reimburse Travelers for the seven checks which were paid through Travelers' account. The testimony we have summarized, together with other evidence in the case—if admissible—clearly warranted a conviction.

Point I. *It was error to give the court's instructions four, five, and six.*

### 4.

Whenever the value of the property stolen exceeds the sum of $35.00 the punishment provided by law is by imprisonment in the penitentiary for not less than twenty-one years.

### 5.

If the property stolen consists of any bill of exchange, draft, order or receipt or of any instrument whereby any demand, right or obligation shall be assigned, transferred, created or released the money which in any event or contingency might be collected thereon shall be adjudged the value of the article stolen.

Therefore, if you find from the evidence, beyond a reasonable doubt, that the defendant, Clarence Leonard Pierce, Jr., did on or about the 11th day of November, 1968, take, steal and carry away the seven money orders introduced in evidence or any of them, or at any other time within three years prior to the filing of the Information herein, which was on the 22nd day of July, 1969, and did, without authority, complete the execution of the money orders by incorporating therein a face value of more than $35.00 and did by signing same, without authority, collect the face amount thereof from third persons, which money he appropriated to his own use, then and in which event it will be your duty to find him guilty of grand larceny and to fix the punishment at from one to twenty-one years in the State Penitentiary. Unless you do so

find, your verdict will be one of not guilty.

The three instructions, read together, are a fair statement of the law applicable to this case insofar as the charges of grand larceny are concerned. Instructions five and six are based on Ark. Stat. Ann. §§ 41-3903 and 41-3906 (Repl. 1964). The first section makes it larceny to steal, among other items, any instrument of writing of value to the owner. The second section is as follows:

*Value of written instrument.*—If the property stolen consists of any bank note, bond, bill, covenant, bill of exchange, draft, order or receipt, or any evidence of debt whatever, of any public security issued by the United States, or any script or other public security issued by this State or any other State or Territory, or of any instrument whereby any demand, right or obligation shall be assigned, transferred, created, increased, released, extinguished or diminished, the money due thereon or secured thereby and remaining unsatisfied, or which in any event or contingency, might be collected thereon, or the value of the property transferred or affected, as the case may be, shall be adjudged the value of the article stolen.

In essence appellant was accused of taking printed form money orders and by inserting dates, payees, and fixed sums of money, created a cashable instrument, contingent of course upon its acceptance by the one to whom it was presented. According to the testimony the cashing of the instruments created a contractual obligation on the part of Railroad Salvage to reimburse Travelers. In the completed form each of the checks exceeded $35.00. In drafting Instruction Five the court lifted the applicable excerpts from § 41-3906.

Point II. *The court erred in refusing to instruct the jury on petit larceny.* The general rule is stated in Wharton's Criminal Law and Procedure, § 2099 (1957):

When on the evidence the accused might be con-

victed in a lesser degree of the offense charged or ot an included offense it is the duty of the court in its instructions to embrace all the degrees of the particular offense and all included offenses to which the evidence is applicable.

In *Hall* v. *State,* 242 Ark. 201, 412 S. W. 2d 603 (1967), we reasserted from a prior holding this statement:

In each case, then, the question of whether it is proper to submit to the jury the question of defendant's guilt of any particular grade of offense included in the indictment must be answered by considering whether there is evidence which would justify a conviction of that offense.

In each of the seven charges the appellant was accused of the larceny of a Travelers Express Money Order. The State advanced the theory that each check was valued at the amount allegedly inserted by appellant. On the other hand it was appellant's theory that if a larceny was committed it concerned only the blank forms of the money orders, the value of which was testified to be three cents each. All the elements constituting the offense of petit larceny were in evidence and the court erred in refusing to give an appropriate instruction.

Point III. *The court erred in allowing statements made by appellant while in custody to be introduced into evidence.* Appellant asserts that his rights as declared in *Miranda* v. *Arizona,* 384 U. S. 436 (1966), were not followed by the officers who interrogated him on the day of his arrest. In a Denno hearing the arresting officers gave this account of the arrest and subsequent procedures: Two officers went to appellant's home around noon with a warrant; the warrant was read to him and his rights were explained; they got in the police car and one of the officers read a standard form waiver, then handed it to appellant for his reading; appellant replied that he understood and signed the waiver; on the way to the station the officers advised that

the charge involved some express money orders alleged-
ly stolen from Railroad Salvage; and appellant asserted
his innocence and stated that Mr. Dye was determined
to give appellant trouble. Continuing, the officer drove
to the lobby of the county jail and there the appellant
asked to call a lawyer. Officer Bolls testified:

A.    . . . . He wanted to call a lawyer. I let him
get hold of a lawyer. I believe, he eventually
did get hold of Vince Skillman. Talked to
him. Made several calls, *not sure he got hold
of him,* but got hold of his office, I think.

\* \* \*

Q.  After he signed. . . .[the waiver] then you
took him to the police station?

A.  Yes.

Q.  Then you let him use a phone?

A.  Yes.

Q.  He called a lawyer?

A.  Yes.

Q.  Mr. Skillman?

A.  He tried to, *I don't know whether he did
or not,* he made several phone calls.

\* \* \*

Q.  After [he made] the telephone calls, what did
you do?

A.  I had called Mr. William Ward.

Q.  With Travelers Express Company?

A.  With Travelers Express Company. I wasn't

> too familiar with money orders. Requested Mr. Ward to be with me when I continued talking to Mr. Pierce about the money orders.

Mr. Ward apparently arrived about the time the telephone calls were completed and Ward and the officer launched into detailed questioning of the accused. It was in that questioning period that much evidence favorable to the State was elicited.

If appellant's rights were violated, it would be under the following language found in Miranda:

> Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed. The defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly and intelligently. If, however, he indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning. Likewise, if the individual is alone and indicates in any manner that he does not wish to be interrogated, the police may not question him. The mere fact that he may have answered some questions or volunteered some statements on his own does not deprive him of the right to refrain from answering any further inquiries until he has consulted with an attorney and thereafter consents to be questioned.
> * * * *

We interpret the quoted language to mean that the accused has an unqualified right to stop the questioning at any stage and request that he be permitted to consult with an attorney. Once that request is made there should be no further questioning until an attorney has in fact been consulted. There is no proof that appellant was able to contact an attorney. We have copied all the testimony concerning the incident; all it reveals is (1) that appellant said he wanted to contact

a lawyer, and (2) that the officer *thought* appellant got in touch with Mr. Skillman or someone in his office, "I think . . . . I don't know whether he did or not, he made several phone calls."

Officer Bolls had the minimum responsibility of ascertaining whether appellant's ·desire to consult an attorney had been fulfilled before the questioning was resumed. When it is admitted by the State's witness that the accused requested consultation with counsel the duty devolved on the State to establish that the consultation was effected prior to the resumption of questioning.

On retrial, the testimony relating to appellant's questioning after the attempt to contact counsel will be excluded unless it be shown by proof not now in the record that it was proper to proceed with the questioning.

Reversed.

HARRIS, C. J., and SMITH, J., dissent in part.

FOGLEMAN, J., not participating.

GEORGE ROSE SMITH, Justice, dissenting in part. The trial court was right in refusing to instruct the jury on petit larceny. It is familiar law that a requested instruction submitting a lesser degree of the offense charged should not be given if there is no evidence to justify a verdict of guilty upon the lesser offense. See *Simmons* v. *State,* 184 Ark. 373, 42 S. W. 2d 549 (1931), citing cases.

That is the situation in the case at bar. According to the undisputed testimony someone filled in the seven express checks in amounts of $100 or more apiece and put them in circulation. If those transactions were authorized there was no larceny at all. If they were not authorized there was a theft of $772. There is no middle ground.

Pierce did not testify at the trial, but in his statements to the officers he insisted that he had authority to issue the checks, that he issued them lawfully, that he put the money for their full value in the cash register, and that if the money proved to be missing some third person must have taken it. Thus, according to Pierce's own version of the case, he was either guilty of no offense whatever or he was guilty of grand larceny.

True, there was testimony that the blank forms were worth only three cents each, but I do not find one syllable in the record that would have justified the jury in finding that Pierce took the blank forms with felonious intent *and then was guilty of no additional wrongdoing.* Yet that is the only theory upon which the jury could have found the accused guilty of petit larceny only. The truth is that for the trial court to have submitted the issue of petit larceny would simply have given the jury an opportunity to reach a compromise verdict not supported by the evidence or to usurp the governor's prerogative by a grant of clemency. For these reasons I disagree with Point II in the majority opinion.

HARRIS, C. J., joins in this dissent.