ERNEST SCOTT PETREE v. STATE OF ARKANSAS

5474                                              451 S. W. 2d 461

Opinion delivered March 23, 1970

*Charles E. Davis,* for appellant.

*Joe Purcell,* Attorney General; *Don Langston,* Asst. Atty. Gen., for appellee

FRANK HOLT, Justice. Upon a jury trial the appellant was found guilty of burglary and grand larceny, as charged by information, and his punishment assessed at 5 and 12 years respectively in the penitentiary. From a judgment on those verdicts comes this appeal. For reversal appellant contends that the trial court erred in admitting into evidence appellant's incriminating admissions since they were involuntarily given. We must agree with the appellant's contention.

The appellant objected to the proffered evidence of his confession to police officers. In accordance with the requirements in *Jackson* v. *Denno,* 378 U. S. 368 (1964), the court conducted an evidentiary hearing in chambers to determine the voluntariness of appellant's confession. The trial court found the confession was voluntarily given and permitted appellant's incriminating admissions to be presented in evidence to the jury.

When the voluntariness of a confession is disputed on federal constitutional grounds it is the responsibility of the appellate court to examine the entire record and make an independent determination of the voluntariness of the confession. *Harris* v. *State,* 244 Ark. 314, 425 S. W. 2d 293 (1968).

The appellant was arrested about 12:30 p.m. on a Saturday. He was placed alone in a security cell by the two arresting officers. About three hours later, these two officers brought him to their office and interrogated him about some stolen goods, some of which were exhibited to him. The appellant testified that his request to call a lawyer was denied and after 20 or 30 minutes of questioning he was returned to his cell. About an hour or two hours later the same officers "called me out again." This time he was per-

mitted to use the phone and he was unable to locate the lawyer he was calling. The officers then showed him a signed confession by the appellant's brother and informed appellant that: "[T]hey had fingerprints and witnesses, that I might as well sign it and I told them I wanted to talk to a lawyer before I signed anything. So they took me back to my cell." This interrogation lasted about 20 minutes. He was left in the security cell for another two or three hours before he was again interrogated by two other officers. Up to this point his narration of events appears uncontradicted.

These two different officers resumed the questioning of appellant about 9:30 that night. One of these officers testified that they began their interrogation by reading to him a waiver form that incorporated the safeguards which are required in *Miranda* v. *Arizona,* 384 U. S. 436 (1966). The officer testified that the appellant responded by saying:

> "I understand what my rights are but I do not want to sign the waiver. I'll tell you what happened, but I will not sign the waiver."

This officer testified that the appellant also said: "[H]e didn't want to sign a waiver until he talked with a lawyer." Further, the appellant made no request in his presence to call a lawyer. This officer stated that he continued to interrogate appellant and made notes in longhand as to what he told him. The appellant was returned to his cell. The officer typed "the report" and about 10:20 p.m. the appellant was again removed from his cell at which time it appears that he signed this report or statement.

The other officer who was present during this interrogation verified that the *Miranda* warning was read to appellant by his fellow officer. He was asked what response appellant made after reading to him his rights. He answered: "At first he advised that he would decline to talk to begin with for just a few minutes,

then he changed his mind." This officer also testified that the appellant refused to sign a waiver. Further:

"Q. Did he request an attorney at that time?

A. Yes, and he said he'd been attempting to call one. We offered again at that time to let him call.

Q. He refused to sign a waiver without an attorney being present?

A. Yes, sir.

Q. How long thereafter did the interrogation continue?

A. Probably ten or fifteen minutes."

The officer further testified that when the appellant was told he could use the phone to call a lawyer the appellant replied that: "[H]e had tried to call a short time before and he wasn't in." The appellant thereafter made and signed the incriminating statement.

The question is presented whether the confession made by the appellant comports with the requirements in *Miranda* that:

"Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed. The defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly and intelligently. If, however, he indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning. Likewise, if the individual is alone and indicates in any manner that he does not wish to be

interrogated, the police may not question him. The mere fact that he may have answered some questions or volunteered some statements on his own does not deprive him of the right to refrain from answering any further inquiries until he has consulted with an attorney and thereafter consents to be questioned. * * *"

In *Harris* v. *State, supra,* we said:

"The prerequisites for the admission in evidence of any statements made by a defendant when he is in custody of officers are found in *Boyd and Byrd* v. *State,* 230 Ark. 991, 328 S. W. 2d 122 (1959). There is a presumption that it is involuntary; and the burden is on the State to show the statement to have been voluntary, that is, freely and understandably made without hope of reward or fear of punishment. In making those determinations the court looks 'to the whole situation and surroundings of the accused.' "

In the case at bar, after an independent review of the entire record of the *Denno* proceeding and considering the total situation and the surroundings of the appellant, we must conclude that this 19-year-old boy's incriminating statements, even though he had previously had experience as an offender, were involuntary and, therefore, inadmissible when the requirements of *Miranda* are applied, together with those of *Harris* v. *State, supra.* In the very recent case of *Pierce* v. *State,* 248 Ark. 204, 451 S. W. 2d 219, we interpreted *Miranda* to mean that the accused has the unqualified right to stop the questioning and consult with an attorney and this request precludes further questioning until there is in fact the requested consultation.

It necessarily follows that the judgment must be reversed and the causes remanded.

FOGLEMAN, J., dissents.

JOHN A. FOGLEMAN, Justice, dissenting. I would affirm the judgment in this case. There cannot be any doubt that before appellant made any incriminating statement he was fully advised of his rights to remain silent, to have the advice of counsel and to stop interrogation. The testimony of the officers revealed that Petree first indicated that he did not want to talk, but after a few minutes changed his mind and thereafter did not refuse to talk or to answer questions. He simply wanted the advice of counsel before he signed anything, either a waiver of his rights or his incriminating statement. Appellant admits that he told Officer Brooks that he wanted to talk to a lawyer before he signed anything. He testified that Brooks then returned him to a cell. He did testify that Officer Dennis had denied him an opportunity to call a lawyer when he requested this right, but he also admits that he said to this officer that he wanted to see his lawyer before he signed a confession or anything. Petree admits that he understood his constitutional rights. He did sign the questioned statement after he had taken the officers to the place where some of the stolen property was concealed.

The circuit judge made these findings:

" '* * * Now, as to the voluntariness of this, it is admitted that Mr. Petree has had contact with authorities previously. In fact, I believe he said he had used Mr. Prosecuting Attorney as his attorney, so he admitted that he knew of his right of trial by jury and all. Having an attorney is one thing and making an attempt to get one is another. He didn't have an attorney of record at this time, anyone to discuss his problems with. It is obvious because if you recall the prosecuting attorney, he'd been told he couldn't represent the defendant since he was prosecuting attorney so he didn't have an attorney at the time of this event. He does say that he wanted to make a telephone call and he finally called for Mahlon and Mahlon was out of town. The police said when he asked about me,

they said, here is the telephone and you can use it. That was after nine o'clock. They said he was here in Fayetteville and the attorneys all have home addresses. He says that is not true, so I will have to make a determination at that point. There was no physical violence indicated by any of the testimony or coercion. The only thing, he says that when he asked for some cigarettes and talked to his wife—or asked to talk to his wife, that he was refused and the statement was made by Dennis that if "you make it hard on us, we'll make it hard on you." The fact that he didn't give him cigarettes or allow him to call his wife, both those things are completely understandable but as far as his constitutional rights, I don't know as he had a right to demand free cigarettes or demand to call his wife, which is quite different from saying, if you insist on calling your lawyer we'll make it hard on you. That isn't the testimony. He said he made the verbal statement but he didn't want to sign a waiver. He did say he knew his constitutional rights because he'd had them explained to him before. So he is not a moron, he is physically able, he wasn't doing anything, in his opinion—I asked him and he thought he was perfectly normal. So I don't believe you have met the requirements that are required to make an involuntary statement.' "

*Miranda* v. *Arizona,* 384 U. S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), prohibits questioning if the accused indicates that he wishes to consult an attorney *before speaking.* I submit that when these circumstances are reviewed, the finding that the statement was not involuntary was justified.

We have previously considered willingness of the subject to answer questions, even though he refused to sign a waiver of rights and later requested a lawyer before he signed the waiver, as a significant factor in determining that a trial judge's finding of voluntariness had adequate evidentiary support. *Walton & Fuller* v.

*State,* 245 Ark. 84, 431 S. W. 2d 462, *Fuller & Walton* v. *State,* (April 21, 1969), 439 S. W. 2d 801, cert. denied, 396 U. S. 930, 90 S. Ct. 260, 24 L. Ed 2d 228 (1969).

I also submit that the majority has failed to follow the precepts of *Harris* v. *State,* 244 Ark. 314, 425 S. W. 2d 293, cert. denied, 393 U. S. 941, 89 S. Ct. 308, 21 L. Ed. 2d 278 (1968), that the findings of the trial judge are entitled to considerable weight in resolving evidentiary conflicts and to respectful consideration on the crucial issue of voluntariness. The result reached here gives neither. The area of disagreement with the trial court is not delineated.

I would distinguish this case from *Pierce* v. *State,* 248 Ark. 204, 451 S. W. 2d 219, in that there was no expression of willingness on the part of Pierce to talk or answer questions, and no limitation on the point at which he wanted the advice of an attorney, as was the case here.