388 S.W.2d 200 (1965)
Webb WASHINGTON, Appellant,
v.
The STATE of Texas, Appellee.
No. 37361.
Court of Criminal Appeals of Texas.
January 6, 1965.
On Rehearing March 24, 1965.
Rehearing Denied April 28, 1965.
James H. Martin, Jerry Chamberlain, Michael E. Schwille, Phil Burleson (on appeal only), Dallas, for appellant.
Henry Wade, Dist. Atty., A. D. Jim Bowie, William F. Alexander, Edwin Davis and C. M. Turlington, Asst. Dist. Attys., Dallas, and Leon B. Douglas, State's Atty., Austin, for the State.
BELCHER, Commissioner.
The conviction is for murder; and the punishment was assessed at death.
The evidence of the state reveals that the appellant, an employee of the deceased who was a woman, committed a cruel and brutal murder by beating her with a hammer and choking her.
A written statement, made and signed by the appellant, and introduced in evidence by the state shows a violent killing of the deceased by the appellant without justification. The physician who performed the autopsy testified that the death of the deceased was caused by strangulation and head injuries.
*201 Dr. Holbrook, a psychiatrist, testified that he examined the appellant, and based upon his examination he expressed the opinion that he knew the difference between right and wrong, and understood the nature and consequences of his acts.
The appellant did not testify, but called his brother and two other lay witnesses who related a spree by the appellant of drinking beer and whiskey all during the night before the killing and also of being drunk.
Appellant called one other witness, a psychiatrist, who testified that he had seen the appellant three different times since the killing and that in his opinion he was not mentally bright, that his level of intelligence was in the lower four per cent of the population, and that he answered questions on intelligence tests at about the second and third grade level. On cross-examination he expressed the opinion that appellant knew the difference between right and wrong, and understood the nature and consequences of his acts.
The appellant insists that the trial court erred in admitting in evidence certain items and objects removed by the officers from his home on the ground that they were obtained under an illegal search warrant.
During the examination of Officer Sims, a state's witness, by appellant's attorney the record reveals the following:
"Q. Mr. Sims, after you arrested this man here, he carried you, went with you and showed you where his home was, didn't he?
"A. Yes sir.
"Q. Prior to that time you didn't know where it was, did you?
"A. I don't recall whether I did or not.
"Q. And, anyway, he went with you?
"A. Yes sir.
"Q. To his house. And gave you permission to go in and search the house, did he not?
"A. Yes, sir.
"APPELLANT'S ATTORNEY:
Well, Your Honor, a search warrant would be unnecessary, and its just a matter of show and glamour. And we object to it. They didn't need the search warrant, they had permission of the defendant to search the premises, the search warrant is unnecessary.
"THE COURT: All right."
It is evident, that it is not necessary to consider the validity of the search warrant in view of the testimony of Officer Sims and the statement of appellant's counsel.
Appellant contends that the trial court erred in admitting in evidence before the jury the written statement of the appellant without first having a hearing before the court on the issue of its voluntary nature; and also erred in failing to charge the jury on the issue of the voluntary nature of the written statement.
The testimony of Officer Dhority reveals that he told the appellant that he did not have to make any statement at all, that any statement he made could be used in evidence against him, and that the appellant then made to him a voluntary statement in writing which he signed. The statement was offered in evidence by the state.
At this time appellant's attorney stated:
"APPELLANT'S ATTORNEY: Your Honor, I would like to ask Mr. Dhority a couple of questions on voir dire.
"APPELLANT'S ATTORNEY: I believe, Mr. Dhority, you testified that the statement which is now being offered into evidence was taken on October 17, 1963, is that correct?
"A. Yes sir, it was.

*202 "Q. Now, the Defendant was arrested on October 15, 1963, was he not?
"A. Yes sir.
"Q. And he was placed in the Dallas City jail on October 15, 1963.
"A. Yes sir.
"Q. Now, he had not been released from jail between October 15 and October 17, the time that the statement was made, was he?
"A. No sir.
"Q. And during that time he did not have any visitors and was not permitted visitors, was he?
"A. I don't know. I was off two days.
"Q. You didn't permit any visitors to visit him, did you?
"A. No sir.
"Q. He was not released from jail on any writ or court order, was he?
"A. No sir.
"APPELLANT'S ATTORNEY: All right, thank you.
"APPELLANT'S ATTORNEY: Your Honor, the Defendant will object to the admittance of the statement made by Mr. Dhority, for the reason that it is not a voluntary statement. By the testimony' of the witnesses who testified in the case. The Defendant was incarcerated for approximately two days before any statement was made. We feel that this continual incarceration itself was an inducement, or effected a threat to the Defendant to give the statement. And for that reason we object to it, on the grounds that it violates the Fifth Amendment of the United States Constitution, that a person may not be called on to testify against himself; further that it violates the FourteenAmendment, in that it was not taken according to the due process of law. That this Defendant remained in the jail for a period of over fifty hours before his voluntary so-called confession was taken, and we object to it on the grounds that it was involuntary.
"THE COURT: The Court overrules your objection, and admits the statement in evidence.
"APPELLANT'S ATTORNEY: Note our exception."
The above quoted testimony adduced by appellant's counsel reflects that he was not restricted in developing any evidence relating to the taking of his written statement, or that appellant was denied any request at this time.
The appellant did not testify.
The fact that the appellant was arrested on October 15, 1963, and placed in jail where he remained until October 17 when he made a written statement to Officer Dhority, does not, standing alone, raise any issue as to the voluntary nature of his written statement. Therefore the failure to have a hearing before the court on the issue of the voluntariness of the written statement, and the failure of the court to charge the jury on the issue of the voluntary nature of the statement was not error. Humphries v. State, 163 Tex.Cr.R. 601, 295 S.W. 2d 218.
The evidence is sufficient to support the conviction and no error appearing, the judgment is affirmed.
Opinion approved by the Court.

ON APPELLANT'S MOTION FOR REHEARING
WOODLEY, Judge.
Appellant re-urges his contention that the court erred in allowing the introduction in evidence of items recovered in an illegal search of his home (Aguilar v. State of Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L. Ld.2d 723; Aguillar v. State, Tex.Cr.App., *203 382 S.W.2d 480; Etchieson v. State, Tex. Cr.App., 382 S.W.2d 478; Mayfield v. State, Tex.Cr.App., 382 S.W.2d 940); his claim that the trial court erred in admitting appellant's confession without first having a hearing on the issue of voluntariness (Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908); his contention that the trial court erred in failing to withdraw the confession after all of the evidence had been introduced and his contention that the court erred in refusing to submit to the jury the issue as to the voluntariness of the confession (Lopez v. State, Tex.Cr.App., 384 S.W.2d 345).
Appellant points to the following as the total circumstances surrounding the taking of the confession: Confined for approximately 50 hours after arrest and before confession; a Negro; of low intelligence; little education; no experience in crime; under illegal arrest and not advised as to right to counsel.
Captain Fritz testified that he talked to appellant on October 15, and for a few minutes on October 16. He talked to him again on the 17th for something less than an hour, following which conversation he "asked him to go with Detective Dhority into an adjoining office, or another office near there, where he could reduce what he told me to writing. And he did, he went with Dhority in there. Q. And Officer Dhority reduced it to writing? A. Yes, sir."
Dr. Holbrook, psychiatrist, testified that appellant's I.Q. "would place him at the very extreme lower limits of normal in his functioning."
Dr. Beavers, Assistant Professor of Psychiatry at the University of Texas Southwestern Medical School, Consultant at the Terrell State Hospital; on the staff of Parkland Hospital and in charge of the men's ward of Woodlawn Psychiatric Hospital, saw appellant on November 7, November 11 and November 14, at the request of defense attorney, for evaluation. In addition to the testimony set out in our original opinion, he testified:
"This man, it became apparent, as I worked with him, is not bright. He has a very small amount of general information. And his ability to comprehend information and put it together is quite limited.
* * * I feel that I can make two diagnoses on this man, the first being a mild mental retardation, from the clinical evaluation and from the psychological testimony; the second diagnoses is one of inadequate personality based on his response to the clinical interview, and the other history of borderline adjustment."
We do not agree with appellant's contention that the trial court erred in admitting the confession to the jury or in failing to withdraw it at the conclusion of the evidence.
Neither do we agree with the state's contention that the undisputed evidence shows that the confession was voluntarily made and was admissible.
We have concluded that the trial court should have responded to appellant's objection and exception to the charge and submitted to the jury the issue of the voluntariness of the confession. Lopez v. State, Tex.Cr.App., 384 S.W.2d 345.
While Jackson v. Denno does not support appellant's contention that the trial court erred in admitting the confession and does not require that a jury rather than the court resolve disputed issues of fact concerning the voluntariness of the confession, it is authority for the proposition that it is now axiomatic that a defendant in a criminal case is deprived of due process of law if his conviction is founded, in whole or in part, upon an involuntary confession, without regard for the truth or falsity of the confession. Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908, 915, citing *204 Rogers v. Richmond, 365 U.S. 534, 81 S.Ct. 735, 5 L.Ed.2d 760.
"A defensive theory when raised by the evidence should always be submitted to the jury. The defendant has a right to an affirmative instruction on every defensive issue raised by the evidence whether the evidence is produced by the state or by the defense, whether it is strong or feeble, whether it is unimpeached or contradicted, or whether it is conflicting." 31 Tex.Jur. 2d p. 660, Sec. 110.
Though the evidence shows a cruel and brutal murder, appellant's guilt is established only by the confession and corroborating evidence obtained as the result of a search of his home with his consent, while under arrest.
The omission of a charge requiring the jury to disregard the confession unless they found beyond a reasonable doubt that it was voluntarily made was calculated to injure the rights of appellant and requires reversal.
Appellant's motion for rehearing is granted, the affirmance is set aside and the judgment is reversed and the cause remanded.
McDONALD, Presiding Judge (dissenting).
In deciding a question raised by the record on appeal the appellate court will, as nearly as possible, place itself in the position of the trial judge when testing the ruling made by him.
When the written statement was offered in evidence by the state, the appellant asked and was permitted to examine on voir dire the officer to whom it was made, as shown by the original opinion. No request was then made to offer any further evidence on the issue of the voluntary nature of the statement.
I am not aware of any case where the the accused did not testify, as in this case, that custody and interrogation, alone, of an accused were sufficient to require that the issue of the voluntary nature of his written statement be submitted to the jury.
I respectfully dissent.