Larry James **HOUSTON**, Petitioner,

v.

C. C. **PEYTON**, Superintendent, Virginia State Penitentiary, Respondent.

Civ. A. No. 68–C–66–R.

United States District Court
W. D. Virginia,
Roanoke Division.

March 17, 1969.

---

Edward J. White, Asst. Atty. Gen., Richmond, Va., for respondent.

OPINION and JUDGMENT

DALTON, Chief Judge.

Larry James Houston petitions this court for a writ of habeas corpus claiming that his convictions in the Hustings Court of the City of Roanoke, on April 19, 1968, were in violation of his constitutional rights. He was indicted on four counts of forgery and three counts of uttering, and after a plea of not guilty and a jury trial he was convicted on all counts and sentenced to fourteen years imprisonment. A previous petition by Houston was dismissed without prejudice by this court on June 26, 1968 because his appeal from the convictions was still pending and it appeared that some or all of the issues raised in the petition would be considered on appeal to the Virginia Supreme Court. For similar reasons a petition to the trial court for habeas corpus relief under Va. Code § 8–596 et seq., as amended, (Cum.Supp. 1968), was dismissed as prematurely filed without a consideration of the merits.

On December 6, 1968, the Virginia Supreme Court denied the petitioner a writ of error, thus affirming his convictions, whereupon Houston again petitioned to this court. Although the Virginia Supreme Court did not discuss the merits of the several grounds upon which the petitioner appealed, it is clear from the record that only three of the issues raised in his present petition were considered by the Virginia Supreme Court in affirming the petitioner's conviction. As to these issues—the jurisdiction of the trial court over one of the offenses charged, the lawfulness of the seizure of certain evidence introduced at the petitioner's trial, and the admissibility into evidence of the petitioner's written admission—the petitioner has exhausted his state remedies as required by 28 U.S.C.A. § 2254. Brown v. Allen, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469 (1953); Grundler v. State of North Carolina, 283 F.2d 798 (4th Cir. 1960); Roseborough v. Peyton, 284 F.Supp. 775 (W.D.Va.1968). Houston has not exhausted his available state post-conviction remedies as to the other grounds

alleged in his petition,[1] and hence as to these grounds the petition shall be dismissed without prejudice. See Ganger v. Peyton, 379 F.2d 709 (4th Cir. 1967).

█ The three issues properly before this court were considered and ruled upon by the trial court in hearings held out of the presence of the jury. The facts underlying these issues are presented with sufficient clarity in the transcript of these hearings, and therefore further hearings in this court are not necessary. See Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963).

The basic facts are these. The petitioner and a companion, Bobby Joe Spivey, drove to Roanoke, Virginia, in a rented car, arriving on Friday afternoon, January 12, 1968. The car had been rented by Houston and Spivey in Cookeville, Tennessee, and it had been due back at the car rental agency the previous day. Shortly after arriving in Roanoke, Houston opened two checking accounts using the name "Robert L. Anderson," and he deposited fifty dollars in one account and forty dollars in the other. He also obtained a hunting license using the same name, while Spivey obtained a license under the name "Lee Anderson." Later that day the two men went to a shopping center in the City of Roanoke where, between six and eight p. m., they made purchases at three stores, Houston paying for the purchases with checks drawn in amounts totalling about $160.-00. At another store Spivey attempted to make a small purchase with a fourth check, which was signed, "Robert L. Anderson" and made payable to "Lee Anderson." However, Spivey's identification, which consisted only of the hunting license, and his dubious answers to questions aroused the suspicions of the store manager, who summoned the aid of a policeman, Sergeant Mitchell, who happened to be shopping in the store. Sergeant Mitchell then questioned Spivey about the check, and the information and explanations given by Spivey clearly disclosed that he was not telling the truth. In Spivey's wallet Sergeant Mitchell found a car rental contract signed by "Bobby Joe Spivey," whom Spivey— still posing as Lee Anderson—claimed was his cousin. Sergeant Mitchell sent the store manager to see if the car was outside and to call the police. Seconds later the manager reported that the car was parked in front of the store, at which point Sergeant Mitchell placed Spivey under arrest.

Houston was sitting behind the wheel of the rented car when a police car arrived on the scene. When Officer Metheny got out of the car he was told by the store manager that Sergeant Mitchell wanted Houston and the car detained. The officer asked Houston for his driver's license and he was handed a Tennessee driver's permit with Houston's name on it. Houston then explained that the car was rented by one of his companions. Officer Metheny told Houston to get in the police car, and when Houston complied he was driven around behind the store where Sergeant Mitchell and another officer had Spivey in their custody. At about this time another store manager approached Sergeant Mitchell and told him that the petitioner, who was sitting in the back of the police car, had cashed a check in his store. Sergeant Mitchell then got in the police car where the petitioner sat with his checkbook and two-deposit slips in his lap. Asked about the checks, Houston explained to the officers that he wrote the checks but had money in the bank to cover them, and he offered the deposit slips as proof of this fact. He also explained that al-

1. The other grounds alleged are (1) witnesses for the Commonwealth were not kept separate at the trial, (2) denial of a suspension of sentence and bail pending the perfection of the petitioner's appeal, (3) the crimes of forgery and uttering arise from the same act or incident and hence are not grounds for separate indictments and convictions, (4) the state court denied his request for an appeal from its dismissal of his habeas corpus petition, (5) factual error on the face of a warrant and an indictment.

though his real name was "Houston," the name "Robert L. Anderson" was a "professional pseudonym" which he occasionally used when submitting articles to various magazines. Sergeant Mitchell remained unconvinced of Houston's honesty and he told the other officers to take Houston and Spivey to the police station.

At the police station Sergeant Mitchell called the sheriff of Cookeville, Tennessee, and learned that Spivey and Houston were wanted in connection with the overdue rented car. At that point the petitioner was "booked" and his personal effects—identification papers, checks and deposit slips—were impounded. When Houston indicated that he wanted to make a statement one of the officers present advised him of his constitutional rights to remain silent and to have assistance of counsel, retained or appointed. At Houston's request for counsel he was handed the telephone directory listing of attorneys and told to call anyone he chose. Houston explained that he could not afford counsel and requested the officer to call an attorney for him. The officer informed the petitioner that he, the officer, did not have the authority to appoint an attorney, that one would be appointed at his preliminary hearing next Monday or Tuesday, and that in the meantime Houston did not have to say anything. Thereupon Houston explained to the police that although he had written the checks in question he had intended all along to deposit money in the banks to cover them.

Houston spent the night in jail and the next morning he was questioned by Sergeant Mitchell. Houston was again advised of his constitutional rights and he signed a waiver form stating that he understood his rights and was willing to make a statement even though he did not have a lawyer present. Houston then dictated and signed a statement, later used at his trial, saying that he had made several purchases in the Roanoke shopping center with checks which he had signed in the name of "Robert L. Anderson." However, at no time did he admit that he had passed the checks with a fraudulent intent. At his trial Houston testified and admitted all except the gist of the offenses, an intent to defraud, and this element the jury inferred from the undisputed facts.

■ At his trial the petitioner argued that the court did not have jurisdiction to try one of the forgery charges because the check, if forged at all, was forged in Salem, Virginia, and not in Roanoke. In Virginia the Commonwealth is as much required to prove the venue of a crime as the elements of the crime itself. West v. Commonwealth, 125 Va. 747, 99 S.E. 654 (1919). Although venue apparently must be proved beyond a reasonable doubt, Jolly v. Commonwealth, 136 Va. 756, 118 S.E. 109 (1923), the proof may be either direct or circumstantial. McClain v. Commonwealth, 189 Va. 847, 55 S.E.2d 49 (1949). The trial judge found that since three of the four checks underlying the forgery indictments were admittedly written in the shopping center in Roanoke, it was reasonable to infer that the fourth check, which Spivey had attempted to pass in the same shopping center, was likewise written in Roanoke, and the question of venue was submitted to the jury under proper instructions. Whether this circumstantial evidence was sufficient to prove venue beyond a reasonable doubt is a question we need not consider. In a habeas corpus proceeding a federal court may not set aside a state court conviction under the due process clause of the Fourteenth Amendment on the grounds of insufficiency of evidence unless the conviction was "totally devoid of evidentiary support." Faust v. State of North Carolina, 307 F.2d 869, 872 (4th Cir. 1962), cert. denied, 371 U.S. 964, 83 S.Ct. 547, 9 L.Ed.2d 511 (1963); Grundler v. State of North Carolina, 283 F.2d 798 (4th Cir. 1960). Such is not the case here.

■ The petitioner next contends that his arrest was unlawful, there being no probable cause, and hence items taken from his person incident to his arrest and used as evidence at his trial were the fruits of an unreasonable search and seizure under the Fourth and Fourteenth

Amendments. Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). We think this argument is without merit. In the first place, the facts strongly suggest that the petitioner, at the time he was taken into custody, voluntarily handed over to the police the incriminating evidence in an effort to establish his innocence. Voluntary consent to a seizure leaves little or no room for the argument that the seizure was unreasonable. See United States v. Burke, 215 F.Supp. 508 (D.C.Mass.1963), aff'd, 328 F.2d 399 (1st Cir. 1964), cert. denied, 379 U.S. 849, 85 S.Ct. 91, 13 L.Ed.2d 52 (1964); United States v. MacLeod, 207 F.2d 853 (7th Cir. 1953). But we need not rest our decision on a questionable finding of voluntary consent to the seizure, since the petitioner's argument falls if his arrest was lawful.

A search of the person incident to his lawful arrest is not unreasonable. United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653 (1950); Grillo v. United States, 336 F.2d 211 (1st Cir. 1964). The petitioner's arrest was lawful if at the time the officers made the arrest "the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense." McCray v. Illinois, 386 U.S. 300, 304, 87 S.Ct. 1056, 1059, 18 L.Ed.2d 62 (1967). We think that the facts and circumstances, outlined above, known to the arresting officers at the time Houston and Spivey were taken to police headquarters constituted probable cause to believe that both men had committed one or more of several offenses, including forging and uttering,[2] issuing bad checks,[3] larceny or embezzlement of the rented automobile,[4] and interstate transportation of a stolen motor vehicle.[5] Although Sergeant Mitchell testified in the trial court that

he did not consider Houston to be under arrest until after a call had been made to the sheriff of Cookeville, Tennessee, concerning the rented car, the officer admitted that Houston would not have been allowed to leave the police car when he was being questioned at the shopping center. We find that there was probable cause to arrest Houston at that time, and that as a matter of law the arrest occurred when Sergeant Mitchell told the other officers to take Houston to police headquarters. See Henry v. United States, 361 U.S. 98, 103, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959); Bailey v. United States, 128 U.S.App.D.C. 354, 389 F.2d 305, 308 (1967). There was no less probable cause for arrest when later at the police station the petitioner was formally booked in connection with the overdue automobile, at which time his identification papers, checkbook, and deposit slips were impounded. Thus even if we deem that Houston's arrest occurred at this later time, the seizure of this evidence was lawful. Similarly, even if some of these items had been taken from Houston at the shopping center prior to his formal arrest, there was probable cause for an arrest at that time and a search and seizure would also have been lawful. Harris v. United States, 389 F.2d 727 (5th Cir. 1958); Bailey v. United States, 128 U.S.App.D.C. 354, 389 F.2d 305 (1967); United States v. Gorman, 355 F.2d 151 (2d Cir. 1965), cert. denied, 384 U.S. 1024, 86 S.Ct. 1962, 16 L.Ed.2d 1027 (1966).

Finally, we must consider the argument of the petitioner that since he was not advised of his rights at the time of his arrest and initial questioning by the police, his subsequent written admissions were inadmissible at his trial under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). We think the facts convincingly refute this argument. At least twice prior to being

2. Va.Code § 18.1–96 (1950).

3. Va.Code § 6.1–115 (1950); see also Bateman v. Commonwealth, 205 Va. 595, 139 S.E.2d 102 (1964).

4. See, Anno., 45 A.L.R.2d 623 (1956).

5. 18 U.S.C.A. § 2312; see, Blum v. United States, 348 F.2d 141 (5th Cir. 1965).

advised of his rights the petitioner explained that he wrote or passed the checks which led to his convictions. However, these oral admissions were excluded from the evidence in the trial court. After being advised of his rights the petitioner made similar oral admissions which were reduced to writing and signed by the petitioner the next day after again being advised of his rights and after signing a waiver of his privilege against self-incrimination and his right to counsel. This written statement was admitted into evidence at his trial. The petitioner does not contend that any of his admissions were involuntary, nor does the record suggest police coercion or interrogation. Furthermore, at the hearing in the trial court the petitioner admitted and convincingly demonstrated that prior to his arrest he was fully aware of his right to remain silent, his right to retained or appointed counsel, and of the duty of the police to so advise him. It is also clear that the petitioner intelligently and voluntarily waived these rights prior to making the written statement. Given these facts, it is arguable that the petitioner's explanations to the police at the time of his arrest were "statements given freely and voluntarily without any compelling influence," the admissibility of which were not affected by *Miranda*. *Miranda v. Arizona, supra,* 384 U.S. at 478, 86 S.Ct. 1602. But conceding that under *Miranda* the petitioner should have been advised of his rights when initially taken into custody, it does not necessarily follow that because of the initial nonfeasance of the police any statement subsequently made by the petitioner after being advised of his rights is inadmissible. Although, in such a case, "a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel," we find here that this burden has been carried. *Miranda v. Arizona, supra,* 384 U.S. at 475, 86 S.Ct. at 1628. The initial failure of the police to advise the petitioner of his constitutional rights in no

way induced or "tainted" his subsequent written admission made after proper warnings were given him, and hence his reliance on *Miranda* is misplaced. See Wong Sun v. United States, 371 U.S. 471, 491, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); United States v. Bayer, 331 U.S. 532, 67 S.Ct. 1394, 91 L.Ed. 1654 (1947); United States v. Gorman, 355 F.2d 151 (2d Cir. 1965), cert. denied, 384 U.S. 1024, 86 S. Ct. 1962, 16 L.Ed.2d 1027 (1966); Castle v. United States, 287 F.2d 657 (5th Cir. 1961), rev'd on other grounds, 368 U.S. 13, 82 S.Ct. 123, 7 L.Ed.2d 75 (1961); Goldsmith v. United States, 107 U.S.App. D.C. 305, 277 F.2d 335 (1960), cert. denied, 364 U.S. 863, 81 S.Ct. 106, 5 L.Ed. 2d 86 (1960); United States v. Hickey, 247 F.Supp. 621 (E.D.Pa.1965).

Accordingly, it is adjudged and ordered that the petition be dismissed and the writ denied.