**UNITED STATES of America, Plaintiff-Appellee,**

v.

**William Green JACKSON, Defendant-Appellant.**

**No. 24353.**

United States Court of Appeals, Ninth Circuit.

Dec. 18, 1970.

Charles M. Berg (argued), Beverly Hills, Cal., for defendant-appellant.

Darrell W. MacIntyre (argued), Asst. U. S. Atty., Robert L. Meyer, U. S. Atty., Robert L. Brosio, Chief, Criminal Division, Los Angeles, Cal., for plaintiff-appellee.

Before BARNES and DUNIWAY, Circuit Judges, and CROCKER, District Judge.*

DUNIWAY, Circuit Judge:

Jackson was convicted by a jury on a charge of stealing property of the United States in violation of 18 U.S.C. § 641. He presents two questions that merit discussion.

### 1. *Validity of the confession.*

■ Jackson contends that his confession, obtained in the absence of counsel, should have been excluded at trial. At the hearing to determine voluntariness Jackson testified that immediately before making the incriminating statements he was fully warned of his rights, including the right to appointed counsel and the right to remain silent, and that he read and signed a waiver of those rights. He does not contend that the waiver was not free and intelligent. At no time did he request appointment of counsel. Under similar circumstances we have held the waiver effective and the ensuing confession voluntary. See Little v. United States, 9 Cir., 1969, 417 F.2d 912; United States v. Dowells, 9 Cir., 1969, 415 F.2d 801; Reinke v. United States, 9 Cir., 1968, 405 F.2d 228; Coughlan v. United States, 9 Cir., 1968, 391 F.2d 371.

Jackson argues that because on prior occasions he had refused to make any statements to FBI agents until he had consulted his lawyer, he should not have been questioned further without counsel present. He relies on United States v. Barnes, 9 Cir., 1970, 432 F.2d 89. In *Barnes* the defendants refused to sign a waiver of constitutional rights. Customs agents, who had obtained a confession implicating the defendants from an accomplice, then brought the accomplice into a room with the defendants and had her repeat her confession. Thus confronted, the defendants admitted their complicity. In holding the interrogation illegal, we stressed that the defendants

---

* Honorable M. D. Crocker, Unted States District Judge, Eastern District of California, sitting by designation.

specifically indicated they did not wish to be questioned further and refused to sign waivers and that the obvious purpose of the use of the accomplice and the continued interrogation was to break their self-imposed silence.

Jackson's case is different. When he initially refused to answer any questions he also indicated "he had some things to say but would like to talk to his lawyer before saying anything," and "preferred to wait a little while." He did not ask that a lawyer be appointed, although he was told that this could be done. The agents waited four days before again seeing him on the day the statements were made. They asked him whether he had changed his mind and was now willing to talk with them. He did not make any incriminatory statements before he signed a waiver of rights. This is a far cry from the flagrant disregard of the defendants' rights in *Barnes*, where the interrogation followed on the heels of specific requests not to be questioned further, no waiver was signed, and the purpose was to surprise the defendants with the confession of an accomplice. We find nothing in *Barnes* or in Miranda v. Arizona, 1966, 384 U.S. 436, 86 S. Ct. 1602, 16 L.Ed.2d 694, to preclude officers from again seeing a suspect in custody who has indicated a potential willingness to talk, after a reasonable interval, provided that their questioning is for the limited purpose of finding out whether the suspect has changed his mind. Jackson's confession was properly admitted in evidence.

2. *The instruction that the property was government property.*

■ The trial judge instructed the jury that as a matter of law the property allegedly stolen was "property of the United States or of an agency thereof." Jackson argues that this instruction invaded the province of the jury by withdrawing from its consideration one of the essential elements of the crime charged. The trial judge in a criminal case may instruct the jury on a question of law which is based upon undisputed facts. Brown v. United States, 9 Cir., 1964, 334 F.2d 488, 491–492 and 497–501 (concurring opinion), aff'd on other grounds, 1965, 381 U.S. 437, 85 S.Ct. 1707, 14 L.Ed.2d 484. In *Brown* the defendant was convicted under 29 U.S.C. § 504 making it unlawful for a member of the Communist Party to serve on an executive board of a labor organization. The court instructed the jury that the board in question was an executive board within the meaning of the statute. We upheld the instruction because the nature and powers of the board under the union's constitution were undisputed and the only remaining issue, whether the board was an "executive board" within the meaning of the statute, presented a pure question of law. This case is controlled by *Brown*.

The property in question is a Mark 12 airplane radio and its power unit. The radio was carried on the property records of the Fort Irwin Flying Club, a nonappropriated, sundry fund activity established pursuant to Army Regulation No. 28–95. The radio was purchased by the government for the club and paid for out of club membership dues. It was installed in a government owned Piper Cub on loan to the club. Army Regulation No. 27–37 provides that in the event of damage or loss to property of nonappropriated funds the government shall have the right to file a claim in favor of the United States. These facts were undisputed and constitute the sum of the evidence introduced on the question of ownership of the radio. The only remaining issue involves the legal significance of these facts and of the army regulations. Whether the radio, in the language of section 641, is a "thing of value of the United States or of any department or agency thereof" is purely a question of law within the special expertise of the trial judge. In instructing the jury on the law, the judge

need not deal in abstractions but may be as specific as the facts permit. And where the facts are undisputed and no issue of credibility is involved, as is the case here, the judge may tell the jury that, as a matter of law, a legal relationship is thereby established. There is no significant abridgement of the right to jury trial; the jury's dispensing power —the power to decide against the law and the facts—remains intact. The instruction stated the correct legal conclusion.

Jackson argues that because the radio was purchased from membership dues rather than appropriated tax revenues the radio was the property of the members and not of the United States, or at least that it was for the jury to decide whether the radio was government property. The source of the funds used to purchase the radio is not controlling here. The Fort Irwin Flying Club is not simply an ordinary unincorporated association. It exists pursuant to and is dependent upon the authority of the United States Army. Army Regulation No. 28–95 provides for the establishment of such funds and designates them "Government instrumentalities." The purpose of the club is to enhance welfare and morale of Army personnel and civilian employees, and thus it is an integral part of military activity. Members have no proprietary interest in property held by the club. See Martin v. United States, 10 Cir., 1959, 264 F.2d 270. Loss or damage to property of the club gives rise to a claim in favor of the United States. A.R. 27–37. All of these factors, we think, compel the conclusion that such clubs are arms of the government performing a governmental function, *cf.* Standard Oil Co. of California v. Johnson, 1942, 316 U.S. 481, 483–485, 62 S.Ct. 1168, 86 L.Ed. 1611. Therefore, club property is as a matter of law, property "of the United States or of [a] department or agency thereof."

Affirmed.