THE STATE OF OHIO, APPELLEE, v. DOAK, APPELLANT.

(No. 7829—Decided December 10, 1975.)

*Mr. Stephan M. Gabalac,* prosecuting attorney, and *Mr. Frederic L. Zuch,* for appellee.
*Mr. Charles E. Grisi,* for appellant.

MAHONEY, J. This is an appeal from convictions for burglary and grand theft in the Summit County Court of Common Pleas.

The defendant, James Doak, was arrested by officers of the Springfield Township Police Department and taken to the Akron Police Department in the early morning hours of March 9, 1975. He was charged with breaking and entering and grand theft, all in connection with a burglary of Foutty's Star Market on Massillon Road.

He was taken to the detective bureau of the Akron Police Department where Officer Householder of the Springfield Township Police Department read his "Miranda rights" to him. At that time, Doak indicated that he understood his rights and wanted to consult his lawyer.

At about 9:30 A. M., the defendant was taken to interrogation room 6 in the detective bureau. Detective Moore of the Akron Police Department read the "Miranda card" to the defendant and defendant again indicated that he

understood his rights and desired to see his attorney. Then, Moore took him to another room and confronted him with a potential state's witness, Abe Tarver. Moore asked Tarver to tell his story again and Tarver related that Doak and Richard Johnson had used his (Tarver's) car the night of the burglary, that he saw them counting money, and that they told him that they had knocked off Foutty's store and gave him $50 for the use of his car.

After Tarver finished his statement, Moore took Doak back toward room 6 and on the way asked him: "Well, what about the burglary now," or words to that effect. Doak replied, "Well okay." Moore testified that he then reminded Doak that he had an attorney and did not have to say anything without consulting his attorney. Moore further testified that the defendant indicated he would make a statement without his attorney's advice and without his attorney being present. The defendant then proceeded to make inculpatory remarks constituting a confession. He would not, however, repeat these remarks for a tape recording of his confession.

The defendant moved to suppress his statement, but he did not testify at the hearing on the motion which was overruled. He then changed his plea to no contest on both counts of the indictment and was found guilty. He brings this appeal assigning the overruling of his motion to suppress as the sole error and contrary to the rule in *Miranda* v. *Arizona* (1966), 384 U. S. 436.

The question presented is whether there is a "knowing and understanding" waiver of constitutional rights where a defendant, who has twice indicated a desire to talk to his attorney, is confronted with the statement of a witness involved in a crime who implicates such defendant, and as a result of that personal confrontation with the witness the defendant gives an inculpatory statement to the police?

Under *Miranda*, there is a "heavy burden" upon the state to show that there was a knowing and intelligent waiver of the defendant's constitutional rights. See, also, *State* v. *Kassow* (1971), 28 Ohio St. 2d 141. The court must

determine from the totality of the circumstances whether there was a voluntary waiver. *Schneckloth* v. *Bustamonte* (1973), 412 U. S. 218.

The defendant argues that any re-questioning or confrontations, after a defendant indicates his desire to consult with an attorney, are prohibited by *Miranda, supra.* Confronting a defendant with witnesses, giving a defendant ballistics reports or a co-defendant's statement to read, or advising a defendant that a henchman has given a statement are psyschological ploys which the rule in *Miranda* was designed to prevent. Some case law supports that view. *Combs* v. *Wingo* (C. A. 6, 1972), 465 F. 2d 96; *United States* v. *Ramos* (C. A. 5, 1971), 448 F. 2d 398; *United States* v. *Barnes* (C. A. 9, 1970), 432 F. 2d 89; *United States* v. *Crisp* (C. A. 7, 1970), 435 F. 2d 354.

We, however, feel that justice is better served by following the cases which hold that re-questioning or confrontation are not per se violations of *Miranda. United States* v. *Jackson* (C. A. 9, 1970), 436 F. 2d 39; *Jennings* v. *United States* (C. A. 5, 1968), 391 F. 2d 512; *United States* v. *Collins* (C. A. 2, 1972), 462 F. 2d 792; *Hughes* v. *Swenson* (C. A. 8, 1971), 452 F. 2d 866; *Hill* v. *Whealon* (C. A. 6, 1974), 490 F. 2d 629.

In *Hughes, supra* at 868, the court said:

"It is neither necessary nor desirable to undertake to fashion a per se rule to be applied in all cases presenting the *Miranda* issue. The critical question always must be: has the prosecution sustained its heavy burden of demonstrating that the defendant was effectively advised of his rights and did he knowingly and understandingly decline to exercise them?

The court said in *Collins, supra* at 787:

"So long as reconsideration is urged in a careful non-coercive manner at not too great length, and in the context that the defendant's assertion of his right not to speak will be honored, it does not violate the *Miranda* mandate."

We believe that the facts before us fit squarely within that language in the *Collins* case. We have considered the totality of the circumstances here and find that the defend-

ant knowingly and understandingly waived his constitutional rights and gave the police a voluntary statement. We, therefore, affirm the judgment of conviction.

*Judgment affirmed.*

VICTOR, P. J., and BRENNEMAN, J., concur.