Bkeutel, J.
On this appeal the People contest the suppression, pursuant to the provisions of sections 813-c and 813-g of the Code of Criminal Procedure, of various oral statements and *448 physical evidence in the prosecution of the defendant Janet Paulin. Defendant has been indicted for murder in the second degree in connection with the death of her husband, Sergeant Joseph Paulin of the New York State Police.
The County Court of Saratoga County, after a full hearing, granted the pretrial suppression motions in a detailed opinion analyzing the facts of the case and the applicable rules of law (61 Misc 2d 289). The Appellate Division unanimously affirmed and in an equally full opinion discussed the issues (33 A D 2d 105). Under the circumstances there is no need to repeat what has already been done so well by the County Court and the Appellate Division. Some additional comments, however, are merited because of the effect upon the jurisdiction of this court of affirmed findings of fact presented to it on appeal, and also because of the relationship to this case of recent holdings in People v. McKie (25 N Y 2d 19) and People v. Kaye (25 N Y 2d 139).
Defendant, while in her own home, made inculpatory statements to police officers. This occurred after the discovery of the dead body of her husband in the home, the occasion for the police being present. Issues arise of admissibility of such statements under the standards laid down by the Supreme Court in Miranda v. Arizona (384 U. S. 436), and also of physical evidence seized either as a direct consequence of such statements or before arrest.
On June 12, 1967, Lt. Kuzia, of the State Police, went to defendant’s home to investigate the death of defendant’s husband, which had been reported by her son of a former marriage. On arrival, he questioned defendant for 20 minutes before giving her the Miranda warnings. During these 20 minutes several admissions were obtained. After being warned, defendant requested her lawyer. He was unable to come but arranged for his associate to go immediately to defendant’s home. In the meantime Capt. Chieco, also of the State Police, arrived, and was told that defendant’s lawyer was on the way. Nevertheless, he engaged defendant in conversation concerning ‘ ‘ this * * * terrible tragedy ’ ’ and asked if she had ‘ ‘ any thoughts about an undertaker * * * you would want to handle this? ” The inculpatory oral admissions to Capt. Chieco followed. Def endant said she had struck decedent on the head with a cooking pot. Capt. Chieco asked to see the pot and defendant *449 pointed ont a particular pot in the kitchen. The pot was seized. Almost immediately afterwards her lawyer arrived. Shortly thereafter, the discovery of stab wounds on decedent’s body caused Capt. Chieco to order a search among the kitchen utensils for a knife. An entire drawer of knives, including a stained one, was seized. The defendant was then formally placed under arrest.
It is concluded that the affirmed findings of fact are supported by sufficient evidence to justify the granting of the motions to suppress.
The people contend that although the oral statements to Lt. Kuzia were given before defendant was advised of her constitutional rights, she was not undergoing custodial interrogation at the time. This contention depends, of course, on a mixed question of fact (People v. Rodney P. [Anonymous], 21 N Y 2d 1, 9-10; see Orozco v. Texas, 394 U. S. 324). The courts below found, as a fact, that defendant was undergoing custodial interrogation during the 20-minute period before she was advised of her rights by IA Kuzia. During these 20 minutes oral admissions were made. Since the record amply supports this affirmed finding of fact, it is binding on this court (e.g., People v. Stephen J. B., 23 N Y 2d 611, 613; People v. Leonti, 18 N Y 2d 384, 389-390).
This is not to say that factfinders under some circumstances could not have concluded differently. To be sure, the questioning of a defendant in her own home by police officers is not, without more, sufficient to conclude that the interrogation was custodial (cf. Orozco v. Texas, 394 U. S. 324, 326-327, supra). There were, however, in this case additional significant circumstances. The body of the deceased had been found in a condition by reason of which it had become evident that the husband had died some days before. The placement of the body in a guest room closet contravened the likelihood of death by natural causes. And the behavior and appearance of the wife upon first meeting the policemen suggested involvement. The report of the presence of the body by the son, who discovered it because of the stench, was an additional circumstance apart from the testimony of the State Police officer that a homicide was assumed in every case where there was a death from other than natural causes.
*450 Also contended by the People is that the statements to Capt. Chieco should not have been suppressed because they “were volunteered without interrogation, or, if [Capt. Chieco'’s] remarks must be construed as interrogation * * * then Defendant * * * voluntarily, competently, knowingly and intelligently waived her privilege against self-incrimination and her right to counsel.”
Again, the fatal trouble with this argument is the affirmed finding of fact, amply supported by the record, that Capt. Chieco’s ‘ ‘ conversation ’ ’ with defendant amounted to a disguised interrogation, and that defendant did not ‘ ‘ knowingly, intelligently and affirmatively waiv[e] her rights under the Fifth and Sixth Amendments.” Thus, too, as the trial court held, it was constitutionally impermissible for Capt. Chieco to have questioned defendant after she requested counsel. In Miranda v. Arizona (384 U. S. 436, 474, supra), it was held that if a defendant requests an attorney ‘ ‘ before speaking to police, they must respect his decision to remain silent.” Here, Capt. Chieco was aware, even as he spoke with defendant,‘■that her lawyer was on the way. Moreover, as found by the courts below, she had not receded from her position that she would not submit to questioning without counsel present.
Also, as the Appellate Division in its opinion observed, the issue is governed by People v. Arthur (22 N Y 2d 325, 329) where the court held: “ Once an attorney enters the proceeding, the police may not question the defendant in the absence of counsel unless there is an affirmative waiver, in the presence of the attorney, of the defendant’s right to counsel ”.
The affirmed findings that defendant was in custody and that the conversation initiated by Capt. Chieco constituted interrogation in fact after defendant’s retention of a lawyer, however blameless Capt. Chieco’s motive, control the disposition of the case. These findings distinguish the instant case from People v. McKie (25 N Y 2d 19, supra) where there was neither custody nor interrogation of a lawyer-represented suspect. They also make distinguishable People v. Kaye (25 N Y 2d 139, supra) where the defendant, in custody and represented by a lawyer, volunteered his confession before being asked a single question.
Inasmuch as the metal cooking pot was seized as a result of the suppressed statements made to Capt. Chieco, the suppres *451 sion of the pot was correct. Given the facts as found, the pot is the inadmissible direct consequence, that is, “ fruit ”, of an incompetent oral admission (People v. Oramus, 25 N Y 2d 825; cf. People v. Grossman, 20 N Y 2d 346; People v. Rodriguez, 11 N Y 2d 279, 286).
The suppression of the kitchen knife was also correct. It is undisputed that the knife was seized following what has been found to have been an interrogation and search which preceded defendant’s formal arrest. Since it is the arrest which would allow the incidental search, the knife is inadmissible (People v. O’Neill, 11 N Y 2d 148, 153; People v. Loria, 10 N Y 2d 368, 373).
Accordingly, the order of the Appellate Division should be affirmed.
Chief Judge Fuld and Judges Burke, Scileppi, Bergan and Jasen concur; Judge Gibson taking no part.
Order affirmed, etc.