OPINION OF THE COURT
Frederic S. Berman, J.
The defendant, who is charged with the crime of murder in the second degree, seeks suppression of any and all statements *180 and conduct[1] of the defendant, Serguei Lanquetot, as well as the suppression of the physical evidence (drugs and cash), obtained directly or indirectly as a result of the statements and conduct of the defendant, which arose through coercion and force employed by Mark Edmonds, Dennis Tinling and/or Kiley Jenkins on the evening of November 22, 1978 at the Lanquetot home on the west side of Manhattan.
A rather unique question is presented to the court for its determination. While it is settled law that a confession or admission obtained by threat or force is classically inadmissible, is a nonverbal act such as pointing to the location of hidden contraband, occurring under similar circumstances subject to the same evidentiary restrictions?
In November, 1979, this court conducted a hearing prior to the trial of Michael Crumrine, a codefendant whose case had been severed, for the purpose of determining whether to suppress certain statements made by Crumrine, as a result of force and coercion employed by Edmonds, Tinling and Jenkins. The court made detailed findings, concluding that Crumrine’s statements should be suppressed.[2]
In substance, this court found that on the evening of November 22, 1978, Edmonds, Jenkins and Tinling, in an overzealous effort to obtain information pertaining to the death of their friend, Edward Barnard, illegally entered the home of the defendant. Immediately upon entering the apartment, these three friends of the deceased noticed an unusual mixing jar containing marihuana which they believed they recognized as having come from the victim’s apartment. This confirmed their suspicions that the defendant and Crumrine had likely participated in the robbery and murder.
In its decision, handed down from the bench at the conclusion of the hearing, the court made a finding that Edmonds, Jenkins and Tinling proceeded to assault both Crumrine and the defendant and specifically kicked, punched, shoved and pushed the defendant and broke a piece of furniture in striking him.[3] All of this was done to acquire information about the murder of their friend and the whereabouts of cash and *181 property taken from the deceased during the crime; thereupon the defendant pointed out the location in the apartment of other similar mixing jars containing marihuana, which supposedly were the property of the deceased.
The defendant seeks not only the suppression of statements, but also the fruits of any statements and acts of the defendant consisting of mixing jars containing marihuana, money and other tangible property, discovered in the defendant’s apartment.
The three friends of the victim, through the use of force and violence, forced the defendant to point out this property, hidden in his apartment, which allegedly had been taken from the premises of the victim at the time of his death.
Both the prosecution and defense refer to the provisions of CPL 60.45 as authority for their respective positions.[4]
The defendant alleges that, as a result of the use of violence by Jenkins, Tinling and Edmonds, he was forced to point out the location of the additional mixing jars (other than the one seen by them as they entered defendant’s apartment), and cash which were hidden in defendant’s apartment. These additional jars and cash allegedly were the property of the deceased. The defendant contends that his conduct in pointing out the jars was a "statement * * * involuntarily made” in violation of CPL 60.45.
The prosecution concedes that CPL 60.45 would bar the use of any oral statements made by defendant in his apartment that arose from the conduct of Jenkins and others. However, the People contend that this section is applicable only to written or oral confessions or admissions. Reliance on that position would appear to be misplaced. An act performed solely for the purpose óf communicating, such as pointing or nodding, is equivalent to a verbal statement. (Fisch, New York Evidence [2d ed], § 759; also, see, McCormick, Evidence [2d ed], *182 § 250, where it is stated [p 596]: "actions are as much a part of the speaker’s effort at expression as his words are, and of course in all cases where the gesture or other act is done * * * solely for the purpose of expression it is on a parity for all present purposes with any purely verbal statement.”)
It is fundamental to our system of rational fairness that, if it be a violation of CPL 60.45 to obtain a verbal statement by means of physical force, regarding the location of stolen property, it would, of necessity, be a similar violation if the use of such force resulted in the individual pointing out the location of the property.
Could it be rationally argued that a statement orally made under physical duress which resulted in locating physical evidence would be excluded, while the act of a deaf mute, under similar circumstances, in pointing to the location of such physical evidence would not? Neither law nor logic could sustain such a distinction.
Consequently, this court finds that the references in CPL 60.45 to "Confession[s], admission[s], or other statement” (emphasis supplied) is properly applicable to acts intended to be communicative. In the instant case, the actions of the defendant, at a moment of frenzy and violence, in retrieving the hidden mixing jars and cash, allegedly the property of the deceased, were acts intended to be communicative.
The Fifth Amendment prohibits compelling a person in a criminal case to be a witness against himself. In Schmerber v California (384 US 757, 763-764) the Supreme Court stated: "It is clear that the protection of the privilege reaches an accused’s communications, whatever form they might take”.
Given the atmosphere of frenzied anger, fear and uncontrolled violence in the defendant’s apartment, it makes no difference whether the defendant made a statement explaining where the jars and cash were supposedly hidden in his apartment; or actually pointed to, or retrieved, the jars and cash. In either event, the defendant’s response to the coercive conduct was obtained in violation of CPL 60.45.
Having determined that the acts of the defendant in revealing the location of the jars and cash were improperly brought about by the use of physical force, the remaining question is whether the People may offer this physical evidence at trial.
It is the People’s position that the additional mixing jars and cash, are admissible because they were the product of an *183 illegal search and seizure conducted by private citizens. Citing People v Horman (22 NY2d 378, cert den 393 US 1057), the People contend that since law enforcement personnel in no way participated in the seizure, there is no basis for suppression of the physical evidence. A careful reading of Horman, however, suggests its inapplicability to this case. In Horman (supra), the court held merely that evidence acquired as a result of an unlawful search and seizure conducted by a private citizen does not come within the proscription of the Fourth Amendment. But, the issue here goes beyond that question and deals with the fruits unlawfully obtained, an issue not present in Horman (supra).
The defendant’s motion seeks the suppression of all "fruits” which came to light as a result of the force and coercion practiced upon the defendant. The defendant contends that the application of the "fruits” doctrine to CPL 60.45 (subd 2, par [a]), which calls for the suppression of "coerced” statements, is required particularly since this portion of the statute was intended to extend the constitutional safeguard of the "classical coercion” rule of the Fifth Amendment to beatings and intimidation inflicted by any person.
It is the defendant’s position that the courts have applied the "fruits” doctrine in dealing with the admissibility of confessions and admissions. It has been held that the prosecution is forbidden from using any leads derived from confessions, obtained either in violation of Miranda v Arizona (384 US 436; see People v Paulin, 25 NY2d 445, 451); United States v Cassell, 452 F2d 533), or as in the present case, obtained involuntarily (see Darwin v Connecticut, 391 US 346; Harrison v United States, 392 US 219, 229; People v Ditson, 57 Cal 2d 415).
Clearly, there was a violation in the present case of CPL 60.45. Proper enforcement of this statute requires this court to exclude both the use and the "fruits” acquired as a result of the violation of statute. In the instant case, "fruits” would encompass certain physical evidence, i.e., the mixing jars and cash, which were seized as a result of their being pointed out by the defendant after being subjected to beatings and threats. Consequently, none of these "fruits” may be introduced at trial.
With respect to any statements, the People acknowledge in their papers that they have no intention of introducing those statements made by the defendant in his apartment.
*184 The motion to suppress statements and physical evidence is granted. However, the solitary mixing jar which was observed by Jenkins, Tinling and Edmonds upon their entry into the apartment is admissible. Its discovery, while arguably the product of an illegal entry into the apartment, clearly is not the product of any coerced statements or acts intended to be communicative. Since all of the mixing jars seized were similar in appearance, the method of determining which jar should be admissible at trial as being in "plain view” when Kiley and the others entered the defendant’s apartment is an evidentiary matter to be determined by the Trial Judge.

. In his initial motion papers, defendant uses the term "verbal acts.”

. The full transcript of this court’s holding in the Crumrine suppression hearing is attached to defendant’s motion papers as Exhibit B.

. The court also found that Crumrine had suffered a broken arm as a result of having been beaten with a baseball bat. As a result, certain inculpatory statements made by Crumrine were suppressed at his trial in which he was ultimately acquitted.

. CPL 60.45 provides as follows:
"1. Evidence of a written or oral confession, admission, or other statement made by a defendant with respect to his participation or lack of participation in the offense charged, may not be received in evidence against him in a criminal proceeding if such statement was involuntarily made.
"2. A confession, admission or other statement is 'involuntarily made’ by a defendant when it is obtained from him:
"(a) By any person by the use or threatened use of physical force upon the defendant or another person, or by means of any other improper conduct or undue pressure which impaired the defendant’s physical or mental condition to the extent of undermining his ability to make a choice whether or not to make a statement”.