Jasen, J.
(dissenting). I had thought the rule well estab *60 lished that our court is bound by affirmed findings of fact made by the courts below where the record supports such findings. (NY Const, art VI, § 3; see, e.g., People v Bryant, 50 NY2d 949; People v Morales, 42 NY2d 129, 138; People v Paulin, 25 NY2d 445, 449-450; People v Leonti, 18 NY2d 384, 390-391.) Evidently that is no longer the case, as the majority today has chosen to disregard the affirmed finding of fact that counsel had not entered the proceedings when defendant was arrested and brought to the police precinct where he confessed to the crime of murder after he was advised of his constitutional rights. In its stead, the majority has made its own independent finding of fact that "the police were made awafe, in the most demonstrable way, of the fact that the defendant was represented by counsel” (p 59). Even if I were to assume the role of fact finder, as my colleagues have apparently chosen to do, I would conclude that counsel had not entered the proceedings herein, for there is absolutely no evidence in this record that Ivy Blecher, the attorney in question, ever represented appellant in this case. All that the record establishes, as found by the suppression court and affirmed by the Appellate Division, is that “Ivy [Blecher] was consulted by the defendant, the defendant’s father and a mutual friend, oné, Raphael Velasquez, for the sole purpose of determining whether or not the defendant who was interested in turning himself in was wanted by the police, what precinct if any might be seeking the defendant, who was looking for him, the reasons why he was being sought, and that since the defendant had every intention of turning himself in, for Mr. [Blecher] to determine to whom and why.” (Emphasis added.) Once the attorney provided this information and arranged for the police to take the defendant into custody, their limited relationship ended. Indeed, the only legal advice Mr. Blecher gave to defendant was to “get Legal Aid”.
Both defendant and Mr. Blecher, as found by the courts below, were aware of the limited nature of their relationship and that it had terminated before defendant was arrested and questioned at the police precinct. Inasmuch as the parties themselves did not intend to establish an ongoing attorney-client relationship, it is difficult to understand how the police can be held accountable for an alleged violation of such a nonexistent relationship. This is not the kind of situation presented by the Hobson case (39 NY2d 479) and its progeny. In each of those cases, "a lawyer ha[d] entered a criminal *61 proceeding representing a defendant in connection with criminal charges under investigation” (p 481) or had been retained to represent the defendant in some other pending criminal prosecution. Here, there was a specific finding of fact by the suppression court, affirmed by the Appellate Division, that Mr. Blecher did not represent the defendant in connection with any criminal charges, but was merely consulted "for the sole purpose of determining whether or not the defendant * * * was wanted by the police * * * [and] at no time otherwise represented the defendant.” I had always believed that the object of the Hobson rule is to prohibit law enforcement agencies from subverting an established attorney-client relationship by interrogating a defendant who had already exercised his right to counsel. Since the record conclusively indicates, and the courts below found, that there was no attorney-client relationship when defendant was taken into custody and subsequently advised of his constitutional rights in the presence of his father, I would hold that his confession to the murder charged was properly admitted at trial. Consequently, there should be an affirmance.
Chief Judge Cooke and Judges Gabrielli, Jones, Fuchs-berg and Meyer concur with Judge Wachtler; Judge Jasen dissents and votes to affirm in a separate opinion.
Order reversed, etc.