[641 NYS2d 846]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ERIC WILSON, Appellant.

Second Department, April 15, 1996

**APPEARANCES OF COUNSEL**

*Daniel L. Greenberg,* New York City *(David Crow* of counsel), for appellant.

*Richard A. Brown, District Attorney* of Queens County, Kew Gardens *(Steven J. Chananie, John M. Castellano* and *Randy S. Alpert* of counsel), for respondent.

*Jonathan E. Gradess,* Albany *(Alfred O'Connor* of counsel), for New York State Defenders Association, *amicus curiae.*

## OPINION OF THE COURT

FRIEDMANN, J.

The issue presented on this appeal is whether counsel's declaration of continued representation was sufficient to invoke a defendant's right to counsel, precluding the Queens police officers who heard the declaration, and who knew that counsel was representing the defendant on related charges in Brooklyn which were dismissed, from legally obtaining a renunciation of the defendant's right to counsel in the absence of counsel.

The record of the *Wade* hearing reveals that on June 24, 1990, the defendant and three other individuals were arrested in Brooklyn and charged with criminal possession of stolen property, i.e., a car, and criminal possession of a weapon, i.e., a .30 caliber carbine rifle. A day or two after the defendant was arraigned, ballistics tests revealed that the rifle was the weapon that had been used in the June 24, 1990 robbery and murder of a visiting Russian physician who had been staying with some friends in Forest Hills, Queens. Queens Detective Dennis Salzmann, who was in charge of the murder investigation, went to the defendant's next scheduled court appearance in Brooklyn, on June 29, 1990, in order to question him about the murder and place him in a lineup. On that occasion, the defendant's Legal Aid lawyer, Norman Berle—who was aware that four Queens detectives were in the Brooklyn Criminal Court to talk to his client, but was not told why—advised Salzmann that he represented the defendant and that he would not allow the police to question his client or put him in a lineup in Berle's absence.

The case was adjourned to the afternoon, when, Berle learned, the Brooklyn prosecutor intended to move to dismiss the weapon and stolen car charges against his client. Berle then went to "the pens", where the defendant told him that he wanted Berle to continue to represent him "no matter what", and that he did not wish to speak to the Queens detectives or to participate in a lineup without Berle being present. When the defendant's Brooklyn case was called later that afternoon the defendant was not produced. However, the prosecutor moved to dismiss the charges (as well as additional pending

charges from an unrelated open case), and the Criminal Court granted the motion. On that occasion, Berle reiterated—on the record, in the presence of the court, the Assistant District Attorney, and the Queens detectives—that it was the defendant's wish that the police were not to question him or put him in a lineup without contacting Berle. Berle testified at the *Wade* hearing that he told Detective Salzmann three separate times that his client should not be put in a lineup unless Berle was present. According to Berle, Salzmann assured him on all three occasions that he would *not* put the defendant in a lineup without notifying counsel. During *his* hearing testimony, Salzmann acknowledged that Berle had repeatedly announced that he represented the defendant, but Salzmann averred that he himself had remained (secretly, apparently) of the opinion that Berle's representation of the defendant had terminated when the court dismissed the charges in Brooklyn.

Notwithstanding Berle's importunings and Salzmann's assurances, the detective put the defendant in a lineup that same evening without attempting to contact Berle, and the defendant was identified by one of the surviving robbery victims as a participant in the Queens crime. The defendant testified at the hearing that at the Queens precinct he had insisted upon his right to counsel, even though Salzmann neither advised him of this right nor made any effort to comply with the defendant's requests. Salzmann, on the other hand, testified that he had asked the defendant if he wanted an attorney at the lineup, but that the defendant had responded that "he had none".

After the defendant was indicted for murder, the defense moved to suppress the lineup identification as having been obtained in violation of the defendant's right to counsel. Following a hearing, the court (Lakritz, J.) credited Salzmann's testimony and declined to suppress the lineup identification, finding that the defendant's right to counsel had ceased when the Brooklyn charges were dropped, and that Berle's repeated declarations that he continued to represent the defendant were of no effect because the "prior attorney-client relationship between the defendant and Mr. Berle had been extinguished by operation of law upon the dismissal of the [Brooklyn] charges". The court reasoned that because Berle had not been *judicially* assigned in connection with the *Queens* murder investigation the defendant was no longer represented by counsel.

We conclude that the Supreme Court erred in not granting the defendant's motion to suppress the lineup identification. In

our system, lawyers represent clients, not cases, so that the dismissal of the Brooklyn charges had no impact upon the relationship between Berle and the defendant. In addition, there is no authority for the proposition that Berle could only continue to represent the defendant in the Queens matter subject to a new judicial assignment. Rather, as in any lawyer-client relationship, Berle represented the defendant if Berle and the defendant agreed that he did.

Furthermore, it is worthy of note that the dismissed Brooklyn charges and the newly formulated Queens charges arose out of the same incident and were indeed different aspects of the same case *(cf., People v Robles,* 72 NY2d 689). In fact, at the Queens precinct, the defendant was interrogated, *inter alia,* about "what happened in the [stolen] car", and the criminal possession of a weapon count that was dismissed in Brooklyn was resurrected in the Queens indictment. As this Court has ruled, "if the right to counsel attaches in one case, it also attaches in any related case arising out of the same criminal transaction" *(People v Horn,* 161 AD2d 603, 604).

In any event, it is well established that "the right to counsel attaches indelibly where an uncharged individual has actually retained a lawyer in the matter at issue" *(People v West,* 81 NY2d 370, 373-374). Here, Berle testified that the defendant had asked him in "the pens" to continue to represent him "no matter what", and that Berle had agreed.

Thereafter, Berle testified that he made three separate declarations to Detective Salzmann, among others, that he was the defendant's attorney, and that the defendant was not to be questioned or put in a lineup in the absence of counsel. One of these announcements was made on the record in open court, in the presence of the Judge, the prosecutor, and the Queens detectives on the occasion of the dismissal of the Brooklyn charges. Although the dissent makes much of the fact that the defendant did not personally corroborate Berle's announced representation of him, he could hardly have done so when he was not produced in court.

Detective Salzmann acknowledged that he had heard Berle's repeated announcements that he represented the defendant and wished to be present during any lineup and/or interrogation involving his client. Notwithstanding this fact, Salzmann made no effort to contact Berle before displaying the defendant in a lineup. Instead, Salzmann testified that he invited a so-called waiver of the defendant's right to counsel by asking the defendant "if he wanted *an* attorney present" during the

lineup, this despite the fact that Salzmann knew the identity of the defendant's *actual* attorney and was aware that he should not have been negotiating directly with a defendant who was represented by counsel *(see, e.g., People v West, supra; People v Skinner,* 52 NY2d 24, 28; *People v Coleman,* 43 NY2d 222; *People v Hobson,* 39 NY2d 479).

We find that following Berle's formal announcements that he was the defendant's attorney, the defendant's right to counsel indelibly attached, and the defendant could not thereafter waive it without Berle being present *(see, e.g., People v LaClere,* 76 NY2d 670; *People v Coates,* 74 NY2d 244; *People v Ermo,* 47 NY2d 863; *People v Paulin,* 25 NY2d 445, 450; *People v Dorant,* 207 AD2d 797; *People v Davis,* 172 AD2d 555). On the facts presented, the defendant's subsequent waiver/renunciation of his right to counsel should not have been sought and was without legal effect because the waiver was obtained in the absence of counsel. As the Court wrote in *People v Hobson (supra,* at 481-482): "Once a lawyer has entered a criminal proceeding representing a defendant in connection with criminal charges under investigation, the defendant in custody may not waive his right to counsel in the absence of the lawyer *(People v Arthur,* 22 NY2d 325, 329). Any statements elicited by an agent of the State, however subtly, after a purported 'waiver' obtained without the presence or assistance of counsel, are inadmissible. Since the purported 'waiver' of defendant's right to counsel was obtained in the absence of his lawyer * * * his statements were inadmissible and should have been suppressed". Similarly, because here the defendant's right to counsel had indelibly attached, no uncounseled waiver of counsel was permissible *(compare, People v Coleman, supra),* and the identification obtained in violation of that right should have been suppressed *(see, e.g., People v LaClere, supra,* at 672-673; *see also, People v Thomas,* 76 NY2d 902, *affg* 155 AD2d 706; *People v Coates, supra).*

Because the lineup herein resulted in the only identification testimony linking the defendant to the commission of the crime, the error cannot be considered harmless *(see, People v Jackson,* 74 NY2d 787). Accordingly, the defendant's conviction must be reversed, on the law, the branch of the defendant's omnibus motion which was to suppress the lineup identification granted, and a new trial ordered. Before the new trial, however, the People are entitled to a hearing at which they should be given the opportunity to establish an independent source for the in-court identification testimony of the witness

who viewed the lineup and positively identified the defendant *(see, People v Jackson, supra; People v Crandall,* 69 NY2d 459).

RITTER, J. P. (concurring). Although I concur with the result reached by the plurality, I am writing separately to focus on the conduct which, I believe, is decisive in this case, to wit: the police action in securing a waiver/renunciation of the defendant's previously invoked right to counsel without counsel being present.

The policy reasons underlying the *Hobson* rule *(see, People v Hobson,* 39 NY2d 479) are equally applicable to investigatory lineups. *People v West* (81 NY2d 370) reminds us that an attorney's presence maintains the balance of power between the State and an individual who has expressed an inability to cope with the proceedings alone and who has invoked the right to interpose an attorney between himself and the State. The attorney's presence also assures that any waiver of the invoked right is knowing, voluntary, and intelligent, and it prevents any undue interference with the attorney-client relationship *(see also, People v Bing,* 76 NY2d 331; *People v Skinner,* 52 NY2d 24). On the facts presented, a waiver/renunciation of the defendant's right to counsel at the lineup should not have been sought and was without legal effect in the absence of counsel *(compare, People v Coleman,* 43 NY2d 222; *cf., People v Vella,* 21 NY2d 249).

Finally, I note that the analysis of my dissenting colleagues turns on their finding that assigned counsel's actions were undertaken without authority from the defendant. The record flatly contradicts this finding. Assigned counsel's testimony that the defendant asked him to represent his interests in the Queens investigation and to inform the Queens detectives that he was to be neither questioned nor placed in a lineup in the absence of counsel stands uncontradicted. Surely, the expedient of not returning the defendant to the courtroom for the afternoon session at which the Brooklyn charges were dismissed, coupled with the refusal by the Queens detectives to inform assigned counsel as to the reason for their interest in the defendant, cannot be the underpinning for a claim that assigned counsel's actions were not authorized by the defendant. Moreover, the defendant categorically denied that he stated, "he had none", when asked if he desired counsel at the Queens lineup. However, even if the trial court's finding that the defendant did make such a statement is credited, it would not lend support to the dissent's position. At the time the state-

ment was alleged to have been made, serious charges then pending in Brooklyn had just been dismissed without apparent reason and the defendant had been taken under police escort to another borough for questioning concerning a much more serious crime. In such a factual context, the statement would be simply insufficient to rebut the express testimony of assigned counsel to the contrary or to support an inference that the actions of assigned counsel were not authorized.

PIZZUTO, J. (dissenting). I cannot concur with my colleagues in the majority who conclude that the defendant's right to counsel in this matter indelibly attached upon the unilateral pronouncement of continued representation made by the defendant's assigned representative in the context of an unrelated and dismissed matter.

To my mind, this case distills to whether, at the time of the subject lineup, the police were aware that there existed an actual attorney-client relationship between Norman Berle and the defendant in connection with the Queens charges, thereby requiring that Berle be notified of the impending lineup and afforded an opportunity to appear. I conclude that under the circumstances of this case it cannot be said that, at the time the subject lineup was conducted, the police knowingly transgressed upon any actual attorney-client relationship which may or may not have existed between Berle and the defendant. Furthermore, in light of the majority's decision, it must be stressed that I do not reach this conclusion based upon any purported waiver or renunciation of the right to counsel on the part of the defendant (cf., *People v Ermo,* 47 NY2d 863; *People v Hobson,* 39 NY2d 479; *People v Paulin,* 25 NY2d 445).

## I

This appeal stems from an armed robbery in Queens, which occurred in the early morning hours of June 24, 1990, and resulted in the shooting death of a visiting Russian physician. At approximately 8:00 P.M. on that same date, the defendant was traveling with three other persons in a stolen vehicle which was involved in a hit-and-run accident with a police vehicle in Brooklyn. The defendant was arrested and charged with criminal possession of stolen property (i.e., the stolen vehicle in which he was traveling), as well as criminal possession of a weapon (i.e., a .30 caliber rifle). Contrary to the conclusion reached by my colleagues in the majority, these charges were wholly unrelated to the robbery/homicide at issue herein, except for the fortuitous fact that the weapon possessed by the

defendant upon his arrest was subsequently ascertained to be the murder weapon.

The defendant's assigned Legal Aid attorney, Norman Berle, appeared on the defendant's behalf at his arraignment on the Brooklyn charges. At that time, Berle was informed that police detectives from Queens were "interested" in the defendant. Berle thereupon approached the detectives and, although he claims not to have known why they were there, he nevertheless told them that "they were not to question [the defendant], not to put him in a lineup". After the defendant's case was adjourned to the afternoon, Berle learned that the Brooklyn charges were going to be dismissed. Berle then went to speak with the defendant, who was in a holding pen. At that time the defendant purportedly told Berle that he wanted Berle to continue to represent him. Further, according to Berle, the defendant stated that he did not wish to speak to the Queens detectives or to participate in a lineup without Berle being present. Thereafter, the defendant's case was called, but the defendant was not brought into the courtroom. Before the case was dismissed, Berle informed the court, the Assistant District Attorney, and the detectives, who he "believe[d]" were still in the courtroom, that he "would still represent [the defendant]" and that the defendant "was not to be put in a lineup as per [the defendant's] wishes, without [Berle] being present".

Significantly, it appears from the record of the *Wade* hearing that the defendant was not present at any time when Berle manifested his avowed continued representation of the defendant. Further, at the time Berle made his announcement in open court he was not informed as to the reason why the defendant was being taken to Queens and, by his own admission, his statement of continued representation was thus based upon his own "suppositions". In addition, the credited police testimony evinces that Berle's statements of continued representation were confined to two instances prior to the dismissal of the Brooklyn charges.

After the Brooklyn charges were dismissed, the defendant was released and he went with the detectives to the 112th Precinct in Queens. Significantly, although Berle saw the defendant with the detectives after his release and knew that he was being taken to Queens, Berle did not accompany the defendant to the 112th Precinct. According to the credited police testimony, once at the 112th Precinct the defendant waived his *Miranda* rights and never indicated that he desired to communicate with Berle or any other attorney. He was then

informed that a lineup procedure was going to be conducted and was asked if he wanted an attorney to be present during the procedure. The defendant responded that "he had none". The defendant was subsequently identified in the lineup as the perpetrator of the subject robbery/homicide.

The defendant moved to suppress the identification testimony at trial, arguing that the identification procedure was conducted in violation of his right to counsel. The Supreme Court denied the defendant's motion, concluding that "(1) the defendant affirmatively stated that he did not have an attorney; (2) the defendant effectively waived his right to an attorney after receiving *Miranda* warnings; and, (3) the prior attorney-client relationship between the defendant and Mr. Berle had been extinguished by operation of law upon the dismissal of the [Brooklyn] charges". I vote to affirm.

## II

"The right to counsel for lineup purposes generally does not attach prior to the commencement of formal proceedings, though other significant judicial activity may implicate its protective cloak" *(People v LaClere,* 76 NY2d 670, 672). However, while suspected individuals are not entitled to counsel at preaccusatory, investigatory lineups, if the right to counsel has been activated prior to that time, it "incorporates a requirement that defense counsel be notified of an impending investigatory lineup, if possible, and that counsel be afforded a reasonable opportunity to attend" *(People v LaClere, supra,* at 672-673). A defendant's State constitutional right to counsel is activated upon the commencement of formal proceedings, as well as "where an uncharged individual has actually retained a lawyer in the matter at issue or, while in custody, has requested a lawyer in that matter" *(People v West,* 81 NY2d 370, 373-374).

In this case, it is uncontroverted that formal proceedings had not been commenced prior to the subject investigatory lineup, nor does the defendant contend that his right to counsel attached based upon any significant judicial activity or a request for an attorney made while in custody. Therefore, by necessity, a finding that the defendant's right to counsel was activated prior to the lineup must be based upon a determination that the defendant "actually" retained Berle to represent him with reference to the Queens charges *(People v West, supra,* at 373). More importantly, since this case concerns an investigatory lineup, to my mind, the dispositive issue is

whether at the time of the subject lineup the police were aware that there existed an actual attorney/client relationship between Berle and the defendant with reference to the Queens charges *(see generally, People v LaClere, supra; People v Coates,* 74 NY2d 244).

On this dispositive question, the record evinces only that Berle, while representing the defendant on a matter which was about to be dismissed and in the defendant's absence, made unilateral statements of continued representation. According to the credited testimony, these statements were subsequently contradicted by the defendant himself, who when asked if he wanted counsel present at the lineup replied that "he had none" *(see, People v Reed,* 181 AD2d 838, 839). To this end, it must be stressed that "[t]he decision to retain counsel rests with the client * * * not the lawyer" *(People v Bing,* 76 NY2d 331, 349). I know of no rule requiring the acceptance of an attorney's assertion of representation over a defendant's disavowal of such representation. Were such a rule to prevail, the incongruous result would be to deprive a defendant of the right to choose not to be represented by counsel in relation to an investigatory lineup or discussions with the police (conducted prior to the commencement of formal proceedings and while not in police custody) while he possesses a constitutional right to represent himself after indictment and during trial *(see, People v Rosen,* 81 NY2d 237, 243). In short, there is no precedential support for the conclusion that law enforcement officials who are poised to undertake an investigatory lineup procedure are obliged to notify an attorney who, in a defendant's absence, purports to represent that defendant, but whom the same defendant does not consider to be his or her representative.

In addition, under *People v Rogers* (48 NY2d 167), the right to counsel in a matter in which defendant is not represented arises in the first instance only because of defendant's actual representation in another matter. If the representation in the other unrelated matter ceases prior to questioning in the matter at issue, the *Rogers* right does not attach *(see, People v Robles,* 72 NY2d 689, 698; *People v Kazmarick,* 52 NY2d 322). Here, since Berle's representation on the Brooklyn charges ceased with the dismissal of that matter, the defendant may not claim a right to counsel pursuant to *People v Rogers (supra).*

As stated previously, a de novo attorney/client relationship was not created by the unilateral assertion of prior assigned defense counsel, no matter how zealous and well-intentioned

his motives might have been. Furthermore, since an indigent defendant is not entitled to the assignment of counsel at a pre-accusatory, investigatory lineup *(see, People v Claudio,* 83 NY2d 76, 81; *People v Hawkins,* 55 NY2d 474, 487), no fundamental Sixth Amendment right to counsel has been violated in this case. We must be mindful of the distinction in our laws between a right to have an attorney present at a pre-accusatory, investigatory lineup, under certain circumstances *(see generally, People v Blake,* 35 NY2d 331, 338; *People v Hawkins, supra,* at 487) and the absence of any right to be assigned counsel at that stage.

### III

I am not persuaded that the weight of precedential authority mandates a determination contrary to that reached by the hearing court *(see, People v LaClere,* 76 NY2d 670, *supra; People v Coates,* 74 NY2d 244, *supra).* In *People v Coates (supra,* at 249), it was established that the police had learned that the defendant, who was a suspect in the crime being investigated, was incarcerated in Rikers Island on an unrelated charge. The police arranged for the defendant to be brought to a police precinct and placed in a lineup. Although the defendant asked for his attorney to be present at the lineup, the police took no action to comply with his request. It was further established that, before placing the defendant in the lineup, the police knew that he was then being represented by counsel on the unrelated and still pending charge. Given these facts, the Court of Appeals held that "[t]hough law enforcement authorities ordinarily are not required to notify counsel of an impending investigatory lineup absent a specific request to do so, when the police are aware that a criminal defendant is represented by counsel and the defendant explicitly requests the assistance of his attorney, the police may not proceed with the lineup without at least apprising the defendant's lawyer of the situation and affording him or her an opportunity to appear" *(People v Coates, supra,* at 249). Construing its decision in *Coates,* the Court subsequently noted that it had "rejected the evidence from the *Coates* lineup because, in addition to that defendant's request for counsel, *the police were aware of the critical feature: defendant's representation by counsel,* though on an unrelated charge" *(People v LaClere, supra,* at 673-674 [emphasis added]).

However, such is clearly not the case at bar. In this case, the defendant never requested the presence of defense counsel and, in fact, he affirmatively stated that he did not have an at-

torney *(see, People v Reed, supra,* at 839). Moreover, in this case, the unrelated charge for which the defendant had counsel had been dismissed prior to the time the lineup was conducted. Consequently, the holding in *People v Coates (supra)* does not compel the conclusion that the police were required to notify Berle of the impending investigatory lineup *(cf., People v Coates, supra).*

The same can be said with reference to the Court's holding in *People v LaClere (supra).* In *LaClere,* the defendant had been arrested following a court appearance with counsel on an unrelated matter. At that time, his counsel had promptly requested that the Judge advise the arresting officers that counsel also represented the defendant on the matter for which he was then being arrested and that the police should not take any statements from the defendant unless counsel was present. The court gave the requested advisement to the police, who thereupon removed the defendant to a precinct and conducted a lineup without notification to the defendant's counsel. On these facts, the Court of Appeals suppressed the lineup evidence "because counsel's announced entry into the case and explicit solicitation of formal judicial admonitory relief attached the defendant's right to counsel" *(People v LaClere, supra,* at 672). A reading of *LaClere* renders it self-evident that the keystone of the analysis was the requested judicial admonition to the police. Indeed, in addition to the quoted language, which constitutes the holding of *People v LaClere (supra),* the Court of Appeals stressed that defense counsel had "sought judicial protective relief" and "secured from the court an alert to the arresting officers that the defendant is represented on the charge for which the imminent lineup is to be conducted" *(People v LaClere, supra,* at 673). Moreover, the Court of Appeals stated that its decision was "a fortiori from *Coates* because here the police were informed by the court, at defense counsel's express request, that the attorney represented defendant on the new charge" *(People v LaClere, supra,* at 674).

Given the absence of a verbal request by the defendant for the presence of counsel, the judicial admonition evident in *LaClere* effectively ensured that the police were aware of the one fact which the Court of Appeals deems "critical", i.e., the defendant's actual representation by counsel on the subject charge. Contrarily, in this case the record does not evince that the police knew that the defendant was actually being represented by Berle on the matter for which the lineup was

being conducted. That is, Berle, who had represented the defendant on a charge which had been dismissed, made his unilateral statements of continued representation in the absence of the defendant. Further, the defendant contradicted Berle's statements by not only failing to request the presence of counsel but, more significantly, by maintaining that he did not have counsel *(see, People v Reed, supra)*. Thus, this case is unlike *People v LaClere (supra)*, because in *LaClere* it was apparent that (1) the attorney was actually representing the defendant on an unrelated charge which was still pending, (2) the defendant was present in the courtroom at the time the police were informed by the Court that counsel represented the defendant on the new charge, and (3) the defendant never contradicted the statements of continued representation made in his presence by counsel. More importantly, this case differs substantially from *LaClere* because in this case there was no ''formal judicial admonitory relief [which] attached the defendant's right to counsel'' *(People v LaClere, supra*, at 672), nor was any requested by Berle. It is also significant for right-to-counsel purposes that, unlike this case, the defendant in *LaClere* was actually being arrested by the police who were present in the courtroom. In short, given the dismissal of the charges for which the defendant had been represented by Berle, the defendant's absence when Berle made his statements of continued representation, the defendant's disavowal of any such representation by counsel, and the lack of any judicial direction to the police, the defendant was not entitled to have Berle notified of the impending investigatory lineup *(cf., People v LaClere, supra)*.

## IV

I must also note my disagreement with the majority's conclusion that the Brooklyn charges were related to the Queens charges. It was sheer fortuity, that at the time the defendant was arrested in the stolen vehicle in Brooklyn, he was in possession of the weapon used in perpetrating the robbery/homicide in Queens. This remote connection does not create a relation between the Brooklyn and the Queens charges for the purposes of a right to counsel analysis. The logic inherent in the majority's position would lead to the inexorable conclusion that any subsequent arrest and indictment would be related to Queens charges, so long as the defendant was apprehended while in possession of the subject weapon. Furthermore, given the $16^{1}/_{2}$ hours which elapsed between the robbery/homicide

and the defendant's fortuitous apprehension in the stolen vehicle, I cannot agree with the majority's conclusion that "the dismissed Brooklyn charges and the newly formulated Queens charges arose out of the same incident and were indeed different aspects of the same case". In this vein, I must also stress that the criminal possession of a weapon charge contained in the Queens indictment pertains only to the defendant's actions during the robbery/homicide and does not in any way pertain to the defendant's actions in Brooklyn at the time of his arrest. As such, I find it particularly disconcerting for the majority to state, as a factual truism, that "the criminal possession of a weapon count that was dismissed in Brooklyn was resurrected in the Queens indictment". Accordingly, since the Queens charges are unrelated to the matter for which Berle represented the defendant in Brooklyn, I find the majority's reliance upon *People v Horn* (161 AD2d 603) to be wholly unpersuasive.

In addition, contrary to my concurring colleague's interpretation of the foregoing analysis, my vote to affirm does not turn on a "finding that assigned counsel's actions were undertaken without authority from the defendant". As I have endeavored to make clear, I believe the dispositive issue is whether the police were aware at the time of the subject lineup that there existed an actual attorney/client relationship between Berle and the defendant with reference to the Queens charges *(see generally, People v LaClere, supra; People v Coates, supra)*. Obviously, the police could not have been privy to any private conversation between Berle and the defendant. Therefore, the issue of whether or not the defendant, while in the holding pen, had requested that Berle continue to represent him is not one of overarching import. To my mind, what is dispositive is that given everything the police had seen and heard, the police did not knowingly transgress upon any attorney/client relationship which may or may not have actually existed between Berle and the defendant.

## V

In sum, I do not find any precedential support for the conclusion that the defendant's right to counsel in this matter attached prior to the investigatory lineup. I am of the view that the majority's decision in this case constitutes an unwarranted expansion of the boundaries demarcated by the Court of Appeals in *People v Coates* (74 NY2d 244, *supra)* and *People v LaClere* (76 NY2d 670, *supra)*. Accordingly, I vote to affirm.

FLORIO, J., concurs with FRIEDMANN, J.; RITTER, J. P., concurs in a separate opinion; PIZZUTO, J., dissents in a separate opinion in which HART, J., concurs.

Ordered that the judgment is reversed, on the law, the branch of the defendant's omnibus motion which was to suppress identification testimony is granted, and a new trial is ordered to be preceded by a hearing as to independent source.